CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 27, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RICHARD BRANDON DAVIS, | ) |
| Plaintiff, | ) Case No. 7:23-cv-00593 |
| v. | ) **MEMORANDUM OPINION** |
| MAJOR C. KELLER, et al | ) By:  Hon. Thomas T. Cullen |
|  | )       United States District Judge |
| Defendants. | ) |

Plaintiff Richard Brandon Davis ("Davis"), a pretrial detainee proceeding *pro se*, filed this civil action against various prison officials and medical staff at the Western Virginia Regional Jail ("WVRJ"), including: Major Chad Keller; Major Derek Stokes; Captain Scott Booher; Leigh Ann Sparks; Dr. Bruce St. Amour; Kimla McDaniel-Nagari, APRN; Daphne Amos, RN; and Megan Stout, RN (collectively, "Defendants"). Davis asserts claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, the Eighth Amendment, and the Fourteenth Amendment.

This matter is now before the court on Defendants' motions to dismiss. On January 8, 2024, Defendants Keller, Stokes, Booher, and Sparks filed a motion to dismiss under Rule 12(b)(6). (ECF No. 29.) On March 12, 2024, Defendants St. Amour, McDaniel-Nagari, Amos, and Stout filed a separate motion to dismiss under Rule 12(b)(6). (ECF No. 44.) Both motions have been fully briefed and are ripe for decision. For the reasons discussed below, the court will grant the motions to dismiss in part and deny them in part.

## I. BACKGROUND

The following facts are taken from Davis's complaint and, at this stage, are presumed true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Davis has long struggled with opioid use disorder ("OUD"). (*See* Compl. ¶ 11.) He started treatment with Suboxone for his OUD when he was about 18 years old and has continued that treatment daily since approximately 2018. (*Id.* ¶¶ 14, 16.) Davis started receiving another medication, a Sublocade[1] injection, in June 2022. (*Id.* ¶ 17.) Davis contends that he has "had a great deal of success" because of his medication assisted treatment ("MAT") with Suboxone. (*Id.* ¶ 19.)

On June 14, 2023, police arrested Davis in front of his workplace on numerous warrants. (*Id.* ¶ 20.) On June 30, Davis was transferred from the New River Regional Jail to the WVRJ. (*Id.* ¶ 21.) Upon his arrival, Davis immediately told the intake nurse about his Suboxone treatment, and she verified his prescription and referred him to the jail's MAT program. (*Id.* ¶ 22, 24.) At that time, his treatment consisted of 8mg of Suboxone three times per day. (*Id.* ¶ 23.)

Over the next few weeks, Davis continued to request placement in the MAT program and that he receive his Suboxone regimen. (*Id.* ¶ 25.) On July 20, 2023, Davis saw a jail medical doctor, Dr. St. Amour, about his treatment program. (*Id.* ¶ 26.) Dr. St. Amour ordered Davis to take a drug test to check the Suboxone in his system, which came back positive, and prescribed 8mg of Suboxone twice per day to continue his treatment. (*Id.* ¶ 27, 28.)

---

[1] Sublocade is an extended-release buprenorphine shot that is usually given once every 28 days in either a 100 or 300 mg dose. (Compl. ¶ 18.)

Davis alleges that jail staff mismanaged his medication while he was at WVRJ. Specifically, Davis claims he was not given his medication at proper times and, at one point, missed a dose. (*Id.* ¶ 30.) On another occasion, Davis received a 16 mg dose all at once, which he told the nurse he was not used to. (*Id.* ¶¶ 31, 32.) In response to his concern, Nurse Megan Stout allegedly told Davis to "take it the way we give it to you or we put you down for refusal and you get nothing at all." (*Id.* ¶ 32.) Nurse Stout also allegedly told Davis that Suboxone withdrawal was worse than heroin but that she had no problem having the doctor remove someone from the treatment program. (*Id.* ¶ 33.)

On August 9, 2023, prison officials strip searched Davis and thoroughly examined his mouth to check whether he was in possession of his medication. (*Id.* ¶ 35.) Davis was cleared to return to his housing unit after being searched. (*Id.*) That same day, around 3:20 p.m., Major Stokes and Captain Booher approached Davis and told him that his Suboxone treatment was being discontinued because he was seen on camera "diverting" his medication. (*Id.* ¶ 38.) Major Stokes and Captain Booher acted under a policy that, according to Davis, Major Keller adopted and enforced. (*Id.* ¶ 5.) Davis denied doing anything illegal with his Suboxone and expressed concern for his mental and physical health, including his sobriety, if his treatment regime was discontinued. (*Id.* ¶¶ 39, 42.) Major Stokes and Captain Booher then asked Davis "why he didn't take this time to get off that 'junk.'" (*Id.* ¶ 40.) Davis replied that he "felt safe" on Suboxone and has had a lot of success because of it. (*Id.* ¶ 41.) The officers told him if he felt unsafe, he could do time in restrictive housing; Davis shook his head "no," and Major Stokes replied, "[T]hat's what I thought." (*Id.* ¶¶ 44, 45.) Davis asked to see Dr. St. Amour about discontinuing his Suboxone, but Major Stokes and Captain Booher refused his request.

(*Id.* ¶ 43.) Davis had previously expressed his fear of relapse and overdose and told Major Stokes and Captain Booher that he had overdosed nine times when not on Suboxone. (*Id.* ¶ 50.)

That evening, a nurse informed Davis that Suboxone was removed from his medical chart and gave him an alternative assortment of detox medications including Imodium, Tylenol, and Meclizine. (*Id.* ¶ 46.) Davis alleges his Suboxone was improperly discontinued as a form of punishment. (*Id.* ¶ 47.) He also alleges that the alternative detox medications have been proven to be less than effective in the treatment of withdrawal and fall below accepted treatment standards. (*Id.* ¶ 51.)

On August 10, 2023, Davis saw Nurse Kimla McDaniel-Nagari after complaining about chest pains. (*Id.* ¶ 52.) Nurse McDaniel-Nagari told Davis that the chest pains were associated with anxiety from the loss of Suboxone. (*Id.*) Davis then requested to see Dr. St. Amour, but Nurse McDaniel-Nagari told him that Dr. St. Amour was in a meeting, and she would pass on a message. (*Id.* ¶ 54.) Davis did not see Dr. St. Amour that day. (*Id.*)

On August 11, 2023, Davis received a formal institutional charge for allegedly diverting Subutex.[2] (*Id.* ¶ 55.) On August 14, Davis attended a hearing on the charge, at which he was found guilty and had his "privileges" suspended for 15 days. (*Id.* ¶¶ 56–57, 59.) Davis alleges that he was found guilty "for the sole reason that Major Stokes wrote the charge." (*Id.* ¶ 57.)

On August 15, 2023, Davis was moved to segregation because he "wouldn't stop on the kiosk and wouldn't stop about [his] medication." (*Id.* ¶ 61.) On August 16, Davis saw Dr.

---

[2] Davis alleges the formal charge mistakenly referenced "Subutex," rather than Suboxone. (Compl. ¶¶ 55, 58.)

St. Amour. (*Id.* ¶ 63.) Davis requested to have his Suboxone continued because otherwise "he would use drugs to relieve his withdrawal symptoms if the opportunity presented itself," and he offered to stay in segregation to rule out any security risk. (*Id.* ¶ 64.) Dr. St. Amour replied that the decision was up to Major Keller.[3] (*Id.* ¶ 65.)

Davis heard nothing for several days while he continued to experience withdrawal symptoms including restless legs, difficulty sleeping, and diarrhea. (*Id.* ¶ 66.) On August 18, Davis hit the medical call button in his cell and Nurse Stout responded, saying, "You did what you did and are being punished for doing so, lay down and drink some water." (*Id.* ¶ 67.)

On August 21, 2023, Davis was moved out of segregation. (*Id.* ¶ 62.) That day, Substance Abuse Counselor Leigh Ann Sparks offered Davis Vivitrol and a spot in the in-patient Residential Substance Abuse Treatment ("RSAT") program. (*Id.* ¶ 69.) Davis told her he already completed in-patient treatment and that he had already tried Vivitrol in the past with no success. (*Id.* ¶ 70.) That afternoon, Davis obtained a grievance form, which he completed and returned the next day. (*Id.* ¶¶ 72–73.)

At some point thereafter, Davis was called to medical and offered Naltrexone again. (*Id.* ¶ 75.) Davis asked why he could not get a Sublocade injection, to which Nurse Daphne Amos[4] told him that "they did not have access to it," which Davis alleges was a lie; he claims Sparks told him before that it was simply too expensive. (*Id.* ¶ 76.) Davis then requested a Sublocade injection, claiming the medical officials' refusal to provide the injection due to its cost was "denying him proper treatment." (*Id.* ¶ 77.) Davis alternatively requested "a way to

---

[3] According to Davis, Major Keller is "the ultimate authority" at WVRJ.

[4] Davis references a "Daffney McBride" in his complaint (*see* Compl. ¶ 76), but Daphne Amos, RN responded in the motion to dismiss. Therefore, the court will identify Nurse Amos accordingly.

have his Suboxone administered to avoid [d]iversion," such as by crushing his medication as had been done previously on August 5. (*Id.* ¶ 74.) Davis also advised that his withdrawal symptoms continued and had been "constantly ignored." (*Id.* ¶ 78.)

On August 25, Davis was again called to medical where a nurse gave him Imodium and Ibuprofen and told him "he was not going to receive any treatment for his disease."[5] (*Id.* ¶¶ 80, 82.) Davis tried to submit another grievance form, but Officer Hemlick, the grievance officer, told him his concerns were already being addressed and he did not need another form. (*Id.* ¶¶ 79, 83.) Officer Hemlick also told Davis that Sparks said he was not showing any signs of withdrawal. (*Id.*) Later that day, Sparks came to Davis's cell and loudly told him he was a "drug addict," a liar, "mentally unstable," and that "he was lucky that she even responded to his emails." (*Id.* ¶ 85.) Davis reported this incident to the grievance officer on August 26. (*Id.* ¶ 86.) Sparks also told Davis in an email and in person that he should not have access to enough drugs to overdose in jail (*see id.* ¶ 103), and that she was against Suboxone and Methadone and would not advocate for him to be on Suboxone (*id.* ¶ 105). On August 27, Davis reported to medical staff that his withdrawal symptoms "ha[d] not dissipated." (*Id.* ¶ 91.)

Davis filed this action on September 13, 2023, under 42 U.S.C. § 1983 against all Defendants in both their official and individual capacities. (*See id.* ¶¶ 2–10.) Davis generally alleges that Defendants violated his rights under the Eighth Amendment, Fourteenth Amendment, and ADA by terminating his Suboxone treatment, offering ineffective alternatives, and failing to properly treat his resulting withdrawal symptoms. Davis asserts the following claims in his complaint:

---

[5] Davis alleges that an unnamed nurse "act[ing] under the [a]uthority of Kimla McDanial [*sic*]" told him this.

**Claim 1:** Defendants Keller, Stokes, Booher, and St. Amour violated his Eighth and Fourteenth Amendment rights by abruptly discontinuing his Suboxone before giving him an in-house disciplinary charge and using this termination of Suboxone as a form of punishment. (*Id.* ¶ 111.)

**Claim 2:** Defendants Stout and McDaniel-Nagari refused to assess or treat his withdrawal and told him his medication was taken away as a form of punishment, in violation of the Eighth and Fourteenth Amendments. (*Id.* ¶ 112.)

**Claim 3:** Defendant St. Amour failed to taper Davis off Suboxone, forcing him into withdrawal without any medical justification, in violation of the Eighth Amendment. (*Id.* ¶ 113.)

**Claim 4:** Defendants St. Amour and McDaniel-Nagari failed to treat his withdrawal symptoms with detox protocol medications from August 15, 2023, until August 25, 2023, in violation of the Eighth and Fourteenth Amendments. (*Id.* ¶ 115.)

**Claim 5:** Defendants Amos, McDaniel-Nagari, and St. Amour failed to effectively treat Davis with a diversion-proof form of Suboxone, in violation of the Eighth and Fourteenth Amendments, Title II of the ADA, and Section 504 of the Rehabilitation Act. (*Id.* ¶ 116.)

**Claim 6:** Defendant Sparks violated the Eighth and Fourteenth Amendments in opining that Davis was not in withdrawal even though she was not a medical professional. (*Id.* ¶ 117.)

**Claim 7:** Defendant Sparks loudly shared Davis's private medical information to third parties, in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). (*Id.*)

**Claim 8:** Defendants Stokes and Booher violated the Eighth and Fourteenth Amendments when they provided opinions and recommendations on Davis's condition even though they were not medically certified.[6] (*Id.* ¶ 118.)

**Claim 9:** Defendants Stokes, St. Amour, Keller, Stokes, and Booher abruptly discontinued effective treatment—Suboxone—for Davis's OUD, forcing him into withdrawal, in violation of the Eighth and Fourteenth Amendments. (*Id.* ¶ 119.)

---

[6] Specifically, Davis invokes the incident during which Stokes and Booher allegedly asked him "why he didn't use his time incarcerated to get off that Junk/Suboxone [*sic*]." (*See* Compl. ¶ 118.)

## II. STANDARD OF REVIEW

Defendants have filed motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." *Wilcox v. Brown*, 877 F.3d 161, 166–67 (4th Cir. 2017). When a plaintiff files a complaint *pro se*, the complaint must be construed liberally, and regardless of how "inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a *pro se* plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (cleaned up).

## III. ANALYSIS

Davis filed suit against Defendants under 42 U.S.C. § 1983. "Section 1983 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Aleman v. City of Charlotte*, 80 F.4th 264, 284 (4th Cir. 2023) (internal quotation omitted). As a preliminary matter, Davis asserts claims against Defendants in both their official and individual capacities, and the court will address each capacity in turn.

First, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in their official capacities, the Defendants are immune from a suit for monetary damages under § 1983. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). State officials can be sued, however, for prospective injunctive relief under § 1983 and the doctrine of *Ex Parte Young*, 209 U.S. 123 (1908). *See Biggs v. North Carolina Dep't of Pub. Safety*, 953 F.3d 236, 242 (4th Cir. 2020). Therefore, to the extent Davis raises claims against any defendant in their official capacity for money damages, those claims must be dismissed.

As to any prospective injunctive relief, the court understands that, as of at least May 1, 2024, Davis is a "fully sentenced inmate" housed at the Riverside Regional Jail. (Pl.'s Fifth Resp. at 4, May 1, 2024 [ECF No. 55]; ECF No. 48.) It is well established that the transfer of a prisoner generally moots any claims for injunctive or declaratory relief relating to the former institution where he was subject to the challenged policy, practice, or condition. *See Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007); *Fields v. Schmittinger*, No. 7:21-cv-00225, 2022 WL 767038, at *6 (W.D. Va. Mar. 14, 2022) (finding request for injunctive and declaratory relief

moot where plaintiff was transferred to a different correctional center and was no longer subject to the challenged conditions or the defendants' supervision); *Phelps v. Bailey*, No. 7:20-cv-00207, 2021 WL 1176196, at *4 (W.D. Va. Mar. 29, 2021) (collecting cases). Since Davis has been transferred from the WVRJ, where he is no longer under Defendants' control,[7] his requests for injunctive and declaratory relief are moot. Therefore, the court will dismiss all claims against Defendants in their official capacity.

For individual-capacity claims, "[t]o establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up). "That is, the official's 'own individual actions' must have 'violated the Constitution.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, the plaintiff in a suit such as the present one must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Consequently, a complaint must contain "sufficient facts to allow the court to infer liability as to *each* defendant." *Langford v. Joyner*, 62 F.4th 122, 126 (4th Cir. 2023).

### A.  Deliberate-Indifference Claims

The core of Davis's complaint is that various Defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth and Fourteenth Amendments. Since Davis brought this suit as a pretrial detainee and not a convicted prisoner, the Fourteenth

---

[7] Moreover, it appears that, as of May 1, 2024, Davis was under court order to complete a "VADOC community corrections alternative program where Suboxone treatment is utilized." (Pl.'s Fifth Resp. at 4.)

Amendment, not the Eighth Amendment, governs his claims. *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021). And although Davis describes his claims by reference to the Eighth Amendment, the court will construe his allegations as though made under the Fourteenth Amendment given Davis's *pro se* status.

This distinction is significant, as the Fourth Circuit recently held that Fourteenth Amendment claims of deliberate indifference to serious medical needs—unlike Eighth Amendment claims—are evaluated under a purely objective test. *See Short v. Hartman*, 87 F.4th 593, 608–09 (4th Cir. 2023). To state a claim of deliberate indifference under the Fourteenth Amendment, a pretrial detainee must allege that:

> (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611.

OUD and symptoms of drug withdrawal qualify as serious medical needs sufficient to support a deliberate-indifference claim. *See, e.g.*, *Thornhill v. Aylor*, No. 3:15-cv-00024, 2016 WL 8737358, at *9 (W.D. Va. Feb. 19, 2016) (drug withdrawal) (collecting cases); *Taylor v. Wexford Health Sources, Inc.*, No. 2:23-cv-00475, 2024 WL 2978782, at *10 (S.D.W. Va. June 13, 2024) (OUD). Davis alleges, and Defendants do not dispute, that he has OUD and was suffering from Suboxone withdrawal during the relevant time. Davis also sufficiently alleges that Defendants were aware of his OUD and knew he suffered from withdrawal symptoms when taken off Suboxone.

### 1. Claims Against Keller, Stokes, Booher, and Dr. St. Amour

Defendants largely rest their arguments for dismissal on the proposition that a disagreement between an inmate and a physician's decision about proper medical care does not establish a claim of deliberate indifference. *See, e.g.*, *Dao v. Harold*, No. 7:22-cv-00554, 2023 WL 3304534, at *2 (W.D. Va. May 8, 2023) (concluding that a doctor's decision to stop an inmate's Suboxone treatment was not sufficient to establish deliberate indifference); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (holding that a prison doctor's decision to substantially modify the medication regimen prescribed by an inmate's cardiologist did not support a claim of deliberate indifference).

But, as Davis argues, this case is different. Crucially, the cited cases turn on a disagreement with medical personnel about the form or manner of treatment. Major Keller, Major Stokes, and Captain Booher are not medical personnel, and Davis alleges that the decision to terminate Davis's Suboxone was not based on a medical judgment, but instead on non-medical, disciplinary grounds. *Cf. Chamberlain v. Mathena*, No. 7:19-cv-00879, 2022 WL 963960, at *7 (W.D. Va. Mar. 30, 2022). Additionally, Davis alleges that Dr. St. Amour made decisions about his care based not on his medical opinion but on the word of Major Keller. Deliberate indifference can be demonstrated by prison doctors' responses to the prisoner's needs or "by prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Davis sufficiently alleges that these Defendants knew about his condition and intentionally deprived him of that medication despite a substantial risk of harm. Accordingly,

the motions to dismiss as to Defendants Keller, Stokes, Booher, and Dr. St. Amour in their individual capacities, will be denied.

### 2. Claims Against Nurse McDaniel-Nagari

Davis claims that Nurse McDaniel-Nagari refused to treat his withdrawal symptoms, violating his constitutional rights. Davis alleges in his complaint that Nurse McDaniel-Nagari assessed him when he complained of chest pains and told him it was a result of high anxiety from coming off his Suboxone. He also alleges that on August 25, 2023, another nurse acting under Nurse McDaniel-Nagari's authority told him that "he was not going to receive any treatment for his disease." Davis finally alleges that Nurse McDaniel-Nagari "fail[ed] to treat his withdrawal symptoms with Detox Protocol Meds from 8/15/2023 to 8/25/2023." (Compl. ¶ 115.) Because Davis alleged that Nurse McDaniel-Nagari knew of his serious medical conditions and did not offer any treatment for at least 10 days, he has stated a viable claim against this defendant.

### 3. Claim Against Nurse Stout

Davis also claims that Nurse Stout refused to assess and treat his withdrawal symptoms, constituting deliberate indifference in violation of his constitutional rights. Davis alleges in relevant part that on August 18—during the period Davis claims he was denied detox medications—Nurse Stout responded to his medical call by simply saying, "You did what you did and are being punished for doing so, lay down and drink some water." (*Id.* ¶ 67.)[8] Because

---

[8] Davis also alleges that Nurse Stout sternly told him to "take it how we give it to you" when giving him a larger dose of Suboxone on an earlier occasion. But Davis did receive his Suboxone on that occasion, so he was not deprived of treatment, and any difference in dosage would be a disagreement with medical decisions. *See Jackson*, 775 F.3d at 178 (A "disagreement between an inmate and a physician over the inmate's proper medical care" falls short of showing deliberate indifference.). Therefore, that fact does not help him establish his claim.

Davis alleges specific facts that Nurse Stout knew of his serious medical condition and refused to treat him, the motion to dismiss as to Nurse Stout in her individual capacity will be denied.

### 4. Claim Against Sparks

Davis asserts that Sparks violated his rights by telling Officer Hemlick that he was not in withdrawal. This comment alone, taken as true, is insufficient to establish any constitutional violation or claim of deliberate indifference. Moreover, Davis alleges that Sparks did offer him alternative treatments, such as in-patient RSAT and Vivitrol/Naltrexone, but that he refused. Davis has therefore failed to allege that Sparks failed to treat him or was deliberately indifferent to his serious medical conditions, even if her offers of assistance were less than enthusiastic or contrary to Davis's preferred course of treatment. Accordingly, Davis's claim against Sparks will be dismissed.

### 5. Claim Against Nurse Amos

Davis does not allege facts sufficient to make a plausible claim against Nurse Amos. Davis's sole allegation in the complaint is that Nurse Amos lied when she told him that he couldn't have a Sublocade injection because it would be too expensive. Davis does not allege any specific instances of Nurse Amos failing to treat his OUD or withdrawal, or her involvement in a decision to terminate his Suboxone.

Davis has also alleged that Amos oversees the jail's medical department. To the extent Davis asserts a claim for supervisory liability against Nurse Amos, that claim also fails. A court may hold an official liable in an individual capacity for the acts of subordinates "if the plaintiff demonstrates supervisory liability, which is based on a supervisor's indifference or tacit authorization of a subordinate's misconduct." *Pratt-Miller v. Arthur*, 701 F. App'x 191, 193 (4th

Cir. 2017) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). But a plaintiff asserting supervisory liability faces a heavy burden. He must show that the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offensive conduct; and that there was an affirmative causal link between the supervisor's inaction and the constitutional injury alleged. *Id.* at 193. The plaintiff must allege the supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 194; *see Stroud*, 13 F.3d at 799 ("Ordinarily, the plaintiff cannot satisfy his burden by pointing to a single incident." (cleaned up)). Davis does not allege any knowledge of a pattern of documented or widespread abuses on the part of Amos, nor any tacit authorization of a subordinate's misconduct. Therefore, his claim against Nurse Amos will be dismissed.

### 6. Qualified Immunity

In their Motion to Dismiss, Defendants Keller, Stokes, Booher, and Sparks argue alternatively that they are entitled to qualified immunity. (Mem. Supp. Mot. Dismiss at 4 [ECF No. 30].) Qualified immunity can protect government officials from civil damages "for alleged constitutional violations stemming from their discretionary functions." *Raub v. Campbell*, 785 F.3d 876, 880–81 (4th Cir. 2015); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When analyzing a qualified-immunity defense, the court considers "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub*, 785 F.3d at 881.

Defendants Keller, Booher, and Stokes[9] argue they are entitled to qualified immunity because there is no clearly established right to Suboxone. But this characterization of the right at issue is unnecessarily narrow. The Fourth Circuit has said that it is "clearly established" that a pretrial detainee has a right to be free from punishment under the Fourteenth Amendment, and has clarified that such a right includes the requirement that "government officials not be deliberately indifferent to any serious medical needs of the detainee." *Sprinkle*, 992 F.3d at 301 (internal quotation omitted). Moreover, under Fourth Circuit precedent, "qualified immunity is generally not available at all for deliberate indifference claims." *Short*, 87 F.4th at 615; *see also Thorpe v. Clarke*, 37 F.4th 926, 935 (4th Cir. 2022) (declining to dismiss where defendants' entitlement to qualified immunity did not appear "on the face of the complaint"). And the court has already found that Davis has stated a claim for deliberate indifference against Keller, Booher, and Stokes.

Finally, to the extent there is any lingering question of whether Defendants violated a clearly established constitutional right, the court finds that question is premature at this stage, and instead reserves consideration of that question for summary judgment. *See Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage."). For those reasons, the court cannot find that Defendants are entitled to qualified immunity at this early stage.

---

[9] Sparks also joins this argument, but the court has already found she is entitled to dismissal of Davis's claims against her.

### B.  HIPAA Claim

Davis also claims that Sparks violated HIPAA, but "[a] plaintiff seeking a remedy under § 1983 must assert the violation of a federal *right*, not merely a violation of federal *law*." *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (internal quotation omitted). HIPAA does not create a private right to sue that may be enforced under § 1983. *Id.* Indeed, Davis admits in his briefing that he "may not be able to state a HIPPA [*sic*] violation" against Sparks. (Pl.'s First Resp. at 7, Jan. 29, 2024 [ECF No. 32].) Because Davis cannot state a § 1983 based on Spark's alleged HIPAA violation, the court will dismiss this claim.

### C.  ADA and Rehabilitation Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The analysis of these claims is "substantially the same." *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018) (internal quotation omitted). To establish a violation of either statute, Davis must allege facts that, if true, would show: (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity provided by a public entity; and (3) he was denied those benefits or

otherwise discriminated against on the basis of his disability. *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020).

Davis alleges that the failure to accommodate him with his "effective MAT treatment Suboxone" constitutes an outright exclusion from a "program" provided by the WVRJ. (Compl. ¶ 88.) He further alleges that the failure to effectively treat his OUD with a "diversion proof form of his Suboxone" violates the ADA and Rehabilitation Act. (*Id.* ¶ 116.) But this court and others in this circuit have held that "the ADA cannot be used to assert a claim of inadequate medical care." *Baxley v. Jividen*, 508 F. Supp. 3d 28, 62 (S.D.W. Va. 2020); *Mondowney v. Balt. Cnty. Det. Ctr.*, No. CV ELH-17-1538, 2019 WL 3239003, at *21 (D. Md. July 18, 2019) ("Although the Fourth Circuit has not addressed this issue in a published opinion, unpublished cases from this circuit, as well as published and unpublished cases from other circuits, indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment."); *Farrar v. Worrell*, No. 7:19-cv-00626, 2022 WL 1464710, at *7 (W.D. Va. May 9, 2022). Because Davis's ADA and Rehabilitation Act claims are based on the same allegations as his deliberate indifference claims—namely, that he was denied proper medication—they fail. *Cf. Taylor*, 2024 WL 38555, at *4–5 (allowing plaintiff's ADA and Rehabilitation Act claims to proceed where he alleged intentional discrimination based on a jail policy prohibiting any Suboxone use, distinguishing cases in which there was "no distinction between" the plaintiff's deliberate-indifference and ADA claims).

Davis also argues that he was discriminated against compared to other inmates who were found to have diverted Suboxone because they were allowed to remain on Suboxone while he was not. (*See* Pl.'s First Resp. at 8–9; Pl.'s Second Resp. at 3, April 5, 2024 [ECF No.

49]; Pl.'s Fifth Resp. at 1–2.) Even assuming this allegation rises to the level of discrimination, Davis does not allege any facts in his complaint to support this assertion, and the court may not consider facts alleged in arguments that do not appear in the pleadings when deciding a motion to dismiss. *See E.I du Pont de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 450 (4th Cir. 2011). Therefore, the court will dismiss Davis's ADA and Rehabilitation Act claims.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be granted in part and denied in part.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 27th day of September, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE