CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 25, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ M.  Poff**
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICHARD BRANDON DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23-cv-00593 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. BRUCE ST. AMOUR, *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Plaintiff Richard Brandon Davis, proceeding *pro se*, filed this civil-rights action under 42 U.S.C. § 1983 against several corrections officers and medical staff at the Western Virginia Regional Jail. (*See* ECF No. 1.) On September 27, 2024, the court granted motions to dismiss Plaintiff's claims against Defendants Leigh Ann Sparks and Daphne Amos, as well as against all Defendants in their official capacities. (*See* ECF No. 60.) On September 29, 2025, the court granted a motion for summary judgment brought by Defendants Major C. Keller, Major D. Stokes, and Captain Booher. (*See* ECF No. 121.) Only Plaintiff's claims against Defendants Dr. Bruce St. Amour, Kimla McDaniel-Nagari, and Megan Stout (collectively, "Defendants") remain. Now before the court is Defendants' notice of release and motion to dismiss (ECF No. 111). For the following reasons, Defendants' motion will be granted, and Plaintiff's remaining claims must be dismissed.

## I.

Plaintiff sued Dr. St. Amour, NP McDaniel-Nagari, and Nurse Megan Stout based on the inconsistent provision and ultimate discontinuation of his Suboxone prescription at the Western Virginia Regional Jail. (*See generally* ECF No. 1, at 6–14.) Defendants jointly moved

for summary judgment on Plaintiff's claims against them. (*See* ECF No. 99.) But a little over a month after their motion for summary judgment became ripe, Defendants filed a notice of release and motion to dismiss on the basis that the United States Bankruptcy Court for the Southern District of Texas entered an order directing that all claims and causes of action against Wellpath, LLC—the entity which employed Defendants to perform their duties in WVRJ—be discharged and permanently enjoining the holders of such claims from continuing any proceeding in connection with their claims. (*See* ECF No. 111.)

Defendants' notice and motion to dismiss relay that Wellpath filed a petition of bankruptcy on November 11, 2024. (*Id.* ¶ 2.) On May 1, 2025, the bankruptcy court entered an order (the "Confirmation Order") confirming a Chapter 11 plan of reorganization (the "Plan") for Wellpath and its affiliates and discharging Wellpath from liability for claims against it stemming from incidents before it filed bankruptcy. (*Id.* ¶ 5.) On May 9, 2025, the bankruptcy court entered a notice of entry of confirmation order, providing notice that the Plan was effective. (*Id.* ¶ 6.) On June 4, 2025, the bankruptcy court entered a general form of order regarding lift stay motions (the "Stay Order"). (*Id.* ¶ 7.)

The Plan provides for the release and discharge of claims, interests, and causes of action against Wellpath. (*See id.* ¶¶ 8–10.) The Confirmation Order also permanently enjoins the holders of discharged claims from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests." (*Id.* ¶ 9; *see also* 11 U.S.C. § 524(a)(2) (explaining that a discharge by a bankruptcy court "operates as an injunction against the commencement or continuation of an

action, the employment of process, or an act, to collect, recover or offset any such debt as personal liability of the debtor, whether or not discharge of such debt is waived.").

Although Dr. St. Amour, NP McDaniel-Nagari, and Nurse Stout are not themselves parties to the bankruptcy proceeding, the Plan includes Wellpath's employees and agents in its definition of "released parties." (*See* ECF No. 111 ¶ 11.) Accordingly, any claimholder who did not affirmatively opt out of the third-party release is permanently enjoined from pursuing claims against them as they would be against Wellpath itself. (*Id.*)

Wellpath notified incarcerated individuals of the opportunity to "opt out" of the release, and the bankruptcy court found that the notice provided was proper. (*Id.* ¶ 12.) Pursuant to the notice, incarcerated claimholders had 90 days from the confirmation date— or until July 30, 2025—to opt out. (*Id.*) Plaintiff did not timely opt out of the third-party release. (*Id.* ¶ 13.) Defendants now seek the dismissal of Plaintiff's claims against them based on the bankruptcy court's orders. (*Id.* ¶ 13.)

Plaintiff opposes Defendants' motion to dismiss on the grounds that he did not receive adequate notice of his opportunity to opt out of the third-party release. (ECF No. 118.) Plaintiff states that he has been in the Community Correction Alternative Program ("CCAP") since January 23, 2025. (*Id.* at 1–2.) Because CCAP is a community-based corrections program and his participation in that program is voluntary and not being served as part of a term of active incarceration, Plaintiff posits that he was not an incarcerated individual at the time Wellpath issued its notice to incarcerated claimholders or the bankruptcy court deemed that notice sufficient. (*Id.* at 2.) He further represents that, to the best of his knowledge, he never received a form giving him the option to opt out of the release. (*Id.* at 2, 6.)

Plaintiff also argues that because his remaining claims are against Defendants individually and not against Wellpath, he should not be precluded from pursuing them. (*Id.* at 3, 6.) He also stresses that, even though he is now a probationer, he still lacks meaningful access to resources that would allow him to better litigate and understand the filings in this action—especially as it relates to bankruptcy matters. (*Id.* at 3–4.)

Defendants reply that this court is not the proper forum to dispute the adequacy of the notice provided to Plaintiff and that, because Plaintiff admits that he did not opt out of the release, his claims against Defendants are released and discharged pursuant to the Confirmation Order and Stay Order, and Plaintiff is permanently enjoined from pursuing those claims. (*See* ECF No. 119.)

## II.

The court agrees with Defendants that, under the Plan language as adopted by the bankruptcy court in the Confirmation and Stay Orders, Defendants are released from liability in this action—and Plaintiff is enjoined from prosecuting his claims against them—if Plaintiff failed to opt out of the third-party release. First, it is clear from the language of the Plan that Defendants are among the released parties under the bankruptcy orders. (*See* ECF No. 2596, Art. I.A.175, in *In re: Wellpath Holdings, Inc.*, Case No. 24-90533 (Bankr. S.D. Tex. Nov. 12, 2025) (defining "related party" to include current and former employees); *see id.* Art. I.A.176 (defining "released parties" to include "related parties" when the party pursuing a claim against them does not opt out of the release).) Based on this language, several courts in this circuit have dismissed claims against individual Wellpath employees where the plaintiff did not opt out of the third-party release. *See, e.g.*, *Washington v. Al Cannon Det. Ctr.*, No. 4:24-CV-03791-

JDA, 2025 WL 3484900, at *3 (D.S.C. Dec. 3, 2025) (dismissing claim against Wellpath *and* individual nurse practitioner defendant); *Polk v. Clark*, No. 1:24CV00744, 2026 WL 699649, at *4 (M.D.N.C. Mar. 12, 2026) (dismissing claim against nurse employed by Wellpath); *English v. Cox*, No. 7:24-CV-00401, 2026 WL 659172, at *6 (W.D. Va. Mar. 9, 2026) (dismissing claims against Dr. St. Amour and NP McDaniel-Nagari based on bankruptcy court's ruling and plaintiff's failure to opt out of third-party release).

Here, it is undisputed that Plaintiff did not opt out of the third-party release. (*See* ECF No. 118, at 2–3.) Nevertheless, the court has been presented with facts suggesting that Plaintiff may not have received adequate notice of his opportunity to opt out of the third-party release before the time to opt out elapsed. To be sure, third-party releases implicate significant due process concerns and raise questions related to the statutory authority of bankruptcy courts. *See generally Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641 (E.D. Va. 2022) (discussing in detail the constitutional and statutory limitations on a bankruptcy court's ability to issue third-party releases). But the court agrees that this is not the proper forum to determine whether the notice offered by Wellpath of the opportunity to opt out was sufficient.

Under 28 U.S.C. § 158, federal district courts have jurisdiction to hear appeals from final judgments, orders, and decrees and from some interlocutory orders and decrees of bankruptcy judges in cases that have been referred to the bankruptcy judge under 28 U.S.C. § 157. 28 U.S.C. § 158(a). However, "only . . . the district court for the judicial district in which the bankruptcy judge is serving" may hear such appeals. *Id.* Because the orders issuing and determining the adequacy of notice came from the U.S. Bankruptcy Court for the Southern District of Texas, any challenges to the adequacy of the notice of the third-party release opt-

out period must be raised in that court and, if necessary, appealed to the U.S. District Court for the Southern District of Texas. In this action, because it is undisputed that Plaintiff did not opt out of the third-party release and because the bankruptcy court's orders release Defendants from liability for Plaintiff's claims, the court must dismiss Plaintiff's claims against Defendants.

## III.

For these reasons, the court will grant the motion to dismiss filed by Defendants Dr. St. Amour, NP McDaniel-Nagari, and Nurse Stout.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 25th day of March, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE